UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-01152

FRED NEKOUEE, individually,                    :
                                               :
            Plaintiff,                         :
                                               :
vs.                                            :
                                               :
DIAGONAL SERVICE CENTER, LLC, a                :
Colorado limited liability company;            :
                                               :
and                                            :
                                               :
CERVANTES, INC., a Colorado corporation;       :
                                               :
            Defendants.                        :
_____/

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendants, DIAGONAL SERVICE CENTER, LLC, a Colorado limited liability company;

and CERVANTES, INC., a Colorado corporation (sometimes referred to as "Defendants"), for

injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with

Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.     Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.     Defendant's, DIAGONAL SERVICE CENTER, LLC, properties, the Diagonal

Service Center, is located at and near 1240 and 1350 Ken Pratt Boulevard, Longmont, Colorado

80501, in Boulder County ("Diagonal Service Center").

3.      Defendant CERVANTES, INC.'s restaurant, La Mariposa Restaurant & Margarita House, is located in the Diagonal Service Center with an address of 1240 Ken Pratt Boulevard 5A, Longmont, Colorado 80501 ("La Mariposa").

4.      Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the property.   The Defendants' properties, restaurant, and stores are located in and do business within this judicial district.

5.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

6.      Defendants each own, lease, lease to, or operate a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(B) and (E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

7.      Diagonal Service Center is a place of public accommodation.

8.      La Mariposa is a place of public accommodation.

9.      Defendants are responsible for complying with the obligations of the ADA.

10.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

11.      Mr. Nekouee travels to the Longmont-Firestone area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

12.     Fred Nekouee has visited the property which forms the basis of this lawsuit on July August 1, 2018 and on October 2, 2018, and he bought goods and sought to avail himself of the goods and services at Diagonal Service Center.

13.     Fred Nekouee visited and bought food and beverages at La Mariposa on August 1, 2018 and on October 2, 2018.

14.     Fred Nekouee visited and bought a beverage at SOL 19 Yoga Studio on August 1, 2018.

15.     Fred Nekouee attended a heavy equipment auction in the area on October 3, 2018, and he visited Rocky Mountain National Park on a day trip on October 2, 2018.

16.     Fred Nekouee plans to return to the property to avail himself of the goods and services offered to the public at the property.

17.     The Plaintiff has definite plans to return to the area and to Diagonal Service Center, and to some of its stores and restaurants, including La Mariposa, in early May of 2019.

18.     Diagonal Service Center and La Mariposa are close to the hotels he stays at in the area and are close to the heavy equipment auction and dealerships he visits.

19.     The Plaintiff likes the food and menu at La Mariposa in the Diagonal Service Center.

20.     The Plaintiff plans to return to eat at La Mariposa again.

21.     For the reasons set forth in paragraphs 11-20 and 31, Fred Nekouee plans to return to Diagonal Service Center, and its stores, shops and restaurants.

22.     The Plaintiff has encountered architectural barriers at the subject property.

23.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability

to access the property, and have impaired his use of the restrooms in La Mariposa.

24.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

25.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

26.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

27.     On his visit to Diagonal Service Center, the Plaintiff encountered excessively steep slopes in its parking lot.

28.     The Plaintiff encountered and observed barriers to access the men's restroom in La Mariposa; and so, he also tried to use the women's restroom in La Mariposa, in which women's restroom he also encountered and observed barriers to access.

29.     The Plaintiff is deterred from visiting Diagonal Service Center even though he enjoys its  food, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

30.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 35 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

31.     Fred Nekouee desires to visit Diagonal Service Center not only to avail himself of the goods and services available at the property but to assure himself that this property is in

compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

32.     The Defendants have discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

33.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

34.     Preliminary inspections of Diagonal Service Center and La Mariposa have shown that violations of the ADA exist.

35.     The violations of the ADA that Fred Nekouee personally encountered or observed include, but are not limited to:

**PARKING**

a.   (i) The van accessible parking space in front of Deli Zone is about 98 inches wide and less than 132 inches wide.  (ii) This van accessible parking space is less than the minimum required width of 132 inches (3350 mm) when the access aisle width is 60 inches, in violation of Federal Law 2010, ADAAG §§ 502.2, 502.3.   (iii) The Plaintiff encountered this condition, and it deters him from visiting Diagonal Service Center.  (iv) The action required to restripe this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

b.   (i) The van accessible parking space near Mac Repair is about 107 inches wide and less than 132 inches wide.  (ii) This van accessible parking space is less than the

minimum required width of 132 inches (3350 mm) when the access aisle width is 60 inches, in violation of Federal Law 2010, ADAAG §§ 502.2 and 502.3.   (iii) The Plaintiff observed this condition, and it deters him from visiting Diagonal Service Center.   (iv) The action required to restripe this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

c.   In the parking lot, the access aisle serving the car space and van space in front of Deli Zone is about 47 inches wide and less than 60 inches wide.   (ii) This access aisle is less than the minimum required width of 60 inches (1525 mm), in violation of Federal Law 2010, ADAAG § 502.3.1.   (iii) The Plaintiff encountered this condition, and it deters him from visiting the Diagonal Service Center.   (iv) The action required to restripe this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

d.   (i) In the parking space for disabled patrons with van access in front of Deli Zone has a running slope as steep as about 1:25.6 (3.9%) and steeper than a slope of 1:48 (2%). (ii) This running slope in this parking space is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this slope and it deters him from visiting La Mariposa, Deli Zone and the Diagonal Service Center.   (iv) The action required to reduce this slope in this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

e.   (i) In the parking lot, the running slope of the front section (closest to the building) of the access aisle serving the parking spaces for disabled patrons in front of Studio Boom and SOL 19 Yoga is about 1:27 (3.7%) and as steep as 1:12.5 (8%) near the ramp where there is change of level, and steeper than a slope of 1:48 (2%).   (ii) These running slopes

in this parking space for disabled patrons are steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered these slopes, and these slopes made his wheelchair unstable.   (iv) The action required to reduce the slopes in this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

f.   (i) In the parking lot, the middle section of the access aisle serving the parking spaces for disabled patrons in front of Deli Zone is not even and has a running slope as steep as about 1:25 (4%) and steeper than a running slope of 1:48 (2%).   (ii) This running slope in this access aisle is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered these conditions and they made his wheelchair unstable, and they deter him from visiting La Mariposa, Deli Zone and the Diagonal Service Center.   (iv) The action required to reduce the running slope in this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

g.   (i) In the parking lot, the portion of the access aisle serving the parking spaces for disabled patrons in front of Studio Boom and to the entrance to the ramp has a cross slope as steep as about 1:28.6 (3.5%) and steeper than a cross slope of 1:48 (2%).   (ii) This cross slope in this access aisle is steeper than the maximum allowed cross slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this steep cross slope and it made his wheelchair unstable.   (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

h.   (i) The cross slope of the walking surface in front of Studio Boom is steeper than

a cross slope of 1:48 (2%).   (ii) This cross slope of this walking surface is steeper than the maximum allowed cross slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this steep cross slope of this walking surface, and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) The cross slope of the walking surface in front of Mac Repair is steeper than 1:48 (2%).   (ii) The cross slope of this walking surface is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this cross slope of this walking surface, and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) The slope of the accessibility curb ramp side or flare in front of Studio Boom is steeper than the maximum allowed slope of 1:10 (10%).   (ii) The slope of this accessibility curb ramp flare is steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3.   (iii) While moving in his wheelchair, the Plaintiff observed this curb ramp flare and he maneuvered his wheelchair to avoid this condition. (iv) The action required to reduce the slope of this curb ramp flare is easily accomplishable and able to be carried out without much difficulty or expense.

k.   (i)   The slope of the accessibility curb ramp side or flare in front of Deli Zone is steeper than the maximum allowed slope of 1:10 (10%).   (ii) The slope of this accessibility curb ramp flare is steeper than the maximum allowed slope of 1:10 (10%), in violation of

Federal Law 2010, ADAAG § 406.3.   (iii) While moving in his wheelchair, the Plaintiff observed this curb ramp flare and he maneuvered his wheelchair to avoid this condition. (iv) The action required to reduce the slope of this curb ramp flare is easily accomplishable and able to be carried out without much difficulty or expense.

l.   (i) The slope of the accessibility curb ramp side or flare in front of Mac Repair is steeper than the maximum allowed slope of 1:10 (10%).   (ii) The slope of this accessibility curb ramp flare is steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this curb ramp flare and it made his wheelchair unstable to the point that he required assistance to regain control of his wheelchair.   (iv) The action required to reduce the slope of this curb ramp flare is easily accomplishable and able to be carried out without much difficulty or expense.

m.   (i) The transition from the access aisle for the parking space marked for disabled use to the access ramp in front of Deli Zone shown in the photographs below has a change of level of about 1.5 inches and greater than a change of level of 0.5 inches.   (ii) This change of level between this access aisle and this access ramp is a change of level of more than the maximum allowed change of level of 0.5 inches, in violation of Federal Law 2010, ADAAG §§ 303.3 and 405.4.   (iii) The Plaintiff observed this condition and it deters him from visiting La Mariposa, Deli Zone and the Diagonal Service Center.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.





n.  (i) The transition from the access aisle for the parking space marked for disabled use to the access ramp in front of Mac Repair has a change of level of about 2.0 inches and greater than a change of level of 0.5 inches.   (ii) This change of level between this access

aisle and this access ramp is more than the maximum allowed change of level of 0.5 inches, in violation of Federal Law 2010, ADAAG §§ 303.3 and 405.4.   (iii) The Plaintiff encountered this condition while moving in his wheelchair, and he required assistance to overcome this change of level.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.

o.   (i) The openings in the drain gate in the walking surface in front of Studio Boom shown in the photograph below are about 1 inch wide and wider than 0.5 inches wide and the elongated openings in this grate are not placed so that the long dimension is perpendicular to the dominant direction of travel.   (ii) These conditions are in violation of Federal law 2010, ADAAG § 302.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this grate and the wheel of his wheelchair got stuck in this grate, and he required assistance to move his wheelchair over this grate.   (iv) The action required to replace this grate is easily accomplishable and able to be carried out without much difficulty or expense.



p.   (i) The openings in the drain gate in the walking surface in front of Mac Repair are about 1 inch wide and wider than 0.5 inches wide and the elongated openings in this grate are not placed so that the long dimension is perpendicular to the dominant direction of travel.   (ii) These conditions are in violation of Federal law 2010, ADAAG § 302.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this grate and the wheel of his wheelchair got stuck in this grate, and he required assistance to move his wheelchair over this grate.   (iv) The action required to replace this grate is easily accomplishable and able to be carried out without much difficulty or expense.

q.   (i) The bottom landing of the access ramp in front of Studio Boom has a slope that is steeper than 1:48 (2%).   (ii) The bottom landing of this access ramp has a slope steeper

than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 405.7.1.   (iii) While moving in his wheelchair, the Plaintiff could not rest at the bottom of this access ramp due to its slope as it made his wheelchair unstable.   (iv) The action required to reduce the slope of the bottom landing of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

r.   (i) The top landing of the access ramp in front of Deli Zone and along the accessible route to La Mariposa has a slope that is steeper than 1:48 (2%).   (ii) This top landing of this access ramp has a slope steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal law 2010, ADAAG § 405.7.1.   (iii) While moving in his wheelchair, the Plaintiff encountered the slope of the top landing of this access ramp and it made his wheelchair unstable and he was unable to rest on this top landing.   (iv) The action required to reduce the slope of the tope landing of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

s.   (i) The top landing of the access ramp in front of Mac Repair has a slope that is steeper than 1:48 (2%).   (ii) This top landing of this access ramp has a slope steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal law 2010, ADAAG § 405.7.1.   (iii) While moving in his wheelchair, the Plaintiff encountered and the slope of the top landing of this access ramp made his wheelchair unstable and he was unable to rest on this top landing.   (iv) The action required to reduce the slope of the tope landing of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

**SOL 19 YOGA STUDIO**

t.   (i) The force needed to open the entrance door to SOL 19 Yoga Studio is about 12

pounds and more than 5 pounds.   (ii) The force needed to open this door is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this entrance door, the Plaintiff required assistance to open this door and to enter SOL 19 Yoga Studio.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

### MEN'S RESTROOM IN SOL 19 YOGA STUDIO

u.  (i) The transfer type shower in the accessible men's restroom in SOL 19 Yoga Studio does not have a folding or non-folding seat.   (ii) A folding or non-folding seat is not provided in this transfer type shower compartment, in violation of Federal Law 2010, ADAAG § 608.4.   (iii) The Plaintiff observed this lack of a seat in this shower, and it deters him from visiting SOL 19 Yoga Studio.   (iv) The action required to provide a seat in this transfer type shower is easily accomplishable and able to be carried out without much difficulty or expense.

### LA MARIPOSA ENTRANCE DOOR AND INTERIOR FOOD SERVICE AREA

v.  (i) The force needed to open the entrance door to La Mariposa is about 10 pounds and more than 5 pounds.   (ii) The force needed to open this door is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. (iii) Due to the force necessary to open this entrance door, the Plaintiff required assistance to open this door and to enter La Mariposa.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without

much difficulty or expense.

w. (i) The countertops throughout the La Mariposa restaurant are about 44 inches above the floor and higher than 36 inches above the floor. (ii) A portion of the counter that is 36 inches long and 36 inches high maximum above the finish floor for a parallel approach or 30 inches long minimum and 36 inches high maximum above the finish floor for a forward approach is not provided, in violation of Federal law 2010, ADAAG § 904.4.1 or 904.4.2. (iii) Due to their height, from his wheelchair, the Plaintiff could not reach objects on these counters. (iv) The action required to provide a portion of the counter that is 36 inches high maximum above the finish floor is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN LA MARIPOSA**

x. (i) As shown in the photograph below, the men's restroom in La Mariposa does not have the signage and the   international symbol of accessibility. (ii) This lack of signage and international symbol of accessibility is in violation of Federal law 2019, ADAAG § 703.7.2.1. (iii) The Plaintiff observed this lack of signage and it deters him from dining at La Mariposa. (iv) The action required to install signage and the international symbol of accessibility is easily accomplishable and able to be carried out without much difficulty or expense.



y.    (i) In the men's restroom in La Mariposa, the restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is about 5 inches and less than 18 inches.   (ii) This restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than the minimum required clearance of 18 inches, in violation of Federal law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of door pull side maneuvering clearance, the Plaintiff required assistance to enter this restroom in his wheelchair.   (iv) The action required to relocate or alter this door is easily accomplishable and able to be carried out without much difficulty or expense.

z.    (i) In the men's restroom in La Mariposa, the accessible toilet stall width is about

46 inches wide and less than 60 inches wide.   (ii) This accessible toilet compartment is

less than 60 inches wide, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.

(iii) Due to the width of this accessible toilet compartment, the Plaintiff required assistance

to position himself to use the toilet.   (iv) The action required to increase the width of this

toilet compartment is easily accomplishable and able to be carried out without much

difficulty or expense.

    aa.   (i) The lavatory supply and drain pipes under the sink in the men's restroom in

La Mariposa are not insulated.   (ii) As shown in the photograph below, the lavatory supply

and drain pipes under the sink are not insulated, in violation of Federal Law 2010, ADAAG

§ 606.5.   (iii) In his wheelchair, the Plaintiff encountered these pipes under this sink and

he risked skin burns and injury to his legs since they are not insulated.   (iv) The action

required to insulate the pipes under this sink is easily accomplishable and able to be carried

out without much difficulty or expense.



bb.   (i) In the men's restroom in La Mariposa, the distance from the centerline of the toilet to the side wall is more than 18 inches.   (ii) The distance from the centerline of this toilet to the side wall is not between a minimum of 16 inches (405 mm) and a maximum of 18 inches (455 mm), in violation of Federal Law 2010, ADAAG § 604.2.   (iii) Due to this condition, the Plaintiff could not reach the toilet paper dispenser from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In the men's restroom in La Mariposa, the bottom edge of the mirror's reflecting surface is about 49 inches above the floor and higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than the maximum allowed height of 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to the height of this mirror's reflecting surface above the floor, the Plaintiff could not see his full face in this mirror.   (iv) The action required to adjust the height of this mirror's reflecting surface is easily accomplishable and able to be carried out without much difficulty or expense.

dd.   (i) In the men's restroom in La Mariposa, the accessible toilet compartment door pull is not provided on both sides of the door near the latch.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to a lack of a door pull on this toilet compartment door, the Plaintiff had difficulty opening the door and could not fully close the door after he received assistance to enter this toilet compartment.   (iv) The action required to install door pulls on both sides of this compartment door near the latch is easily accomplishable and able to be carried out without much difficulty or expense.

ee.   (i) In the men's restroom in La Mariposa, to operate the lock to the accessible

toilet compartment requires tight grasping, pinching, or twisting of the wrist.   (ii) This condition is in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff tried but could not operate this door lock with a closed fist or loose grip.   (iv) The action required to replace this door lock is easily accomplishable and able to be carried out without much difficulty or expense.

ff.   (i) As shown in the photograph below, in the men's restroom in La Mariposa, the toilet compartment does not have side wall and rear wall grab bars.   (ii) The lack of side wall and rear wall grab bars is in violation of Federal Law 2010, ADAAG §§ 604.5.1 and 604.5.2.   (iii) Due to the lack of grab bars in this men's restroom, the Plaintiff required assistance to transfer himself from his wheelchair to the toilet and from the toilet back to his wheelchair.   (iv) The action required to install grab bars is easily accomplishable and able to be carried out without much difficulty or expense.



**WOMEN'S RESTROOM IN LA MARIPOSA**

gg.   (i) The women's restroom in La Mariposa does not have the signage and the international symbol of accessibility.   (ii) This lack of signage and international symbol of accessibility is in violation of Federal law 2019, ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of signage and it deters him from dining at La Mariposa.   (iv) The action required to install signage and the international symbol of accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) La Mariposa women's restroom door pull side maneuvering clearance in a front approach perpendicular to the door way is blocked by the wall and is less than 60 inches.   (ii) The door pull side maneuvering clearance in a front approach perpendicular to the doorway is less than the minimum required clearance of 60 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of clearance, it was difficult for the Plaintiff to enter this restroom with his wheelchair.   (iv) The action required to increase this maneuvering clearance space is easily accomplishable and able to be carried out without much difficulty or expense.

ii.   (i) La Mariposa women's restroom door pull side maneuvering clearance in a front approach perpendicular to the doorway is less than 48 inches.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of clearance, the Plaintiff required assistance to maneuver his wheelchair to enter this toilet compartment.   (iv) The action required to increase this maneuvering space is easily accomplishable and able to be carried out without much difficulty or expense.

jj.   (i) In the women's restroom in La Mariposa, a door pull is not provided on both sides of the door near the latch of the accessible toilet compartment.   (ii) This condition is

in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of door pulls on this door to the accessible toilet compartment, the Plaintiff had difficulty opening this door and once he was inside he could not fully close this door.   (iv) The action required to install door pulls on both sides the door to the accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

kk.   (i) In the women's restroom in La Mariposa, the accessible toilet compartment is only about 41 inches wide and less than 60 inches wide.   (ii) This accessible toilet compartment is less than 60 inches wide, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.   (iii) Due to the narrow width of this accessible toilet compartment, the Plaintiff had difficulty maneuvering his wheelchair once inside this compartment.   (iv) The action required to increase the width of this accessible toilet compartment or to remove it and make this restroom a single user restroom is easily accomplishable and able to be carried out without much difficulty or expense.

ll.   (i) In the women's restroom in La Mariposa, the rear wall grab bar only extends about 17 inches on one side and 19 inches on the other side from the centerline of the water closet.   (ii) This rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side from the centerline of the water closet, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to the position of this rear wall grab bar, the Plaintiff had great difficulty transferring himself from his wheelchair to the toilet.   (iv) The action required to replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

mm.   (i) In the women's restroom in La Mariposa, the side wall grab bar is only about 36 inches long and is less than 42 inches long.   (ii) This side wall grab bar is less

than a minimum of 42 inches long, in violation of Federal Law 2010, ADAAG § 604.5.1. (iii) Due to lack of length of this side wall grab bar, the Plaintiff had great difficulty transferring himself from the toilet to his wheelchair.   (iv) The action required to replace this sidewall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

nn.   (i) In the women's restroom in La Mariposa, the side wall grab bar only extends about 47 inches from the rear wall and less than 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a minimum of 54 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the location of this side wall grab bar and its length, the Plaintiff had great difficulty transferring himself from the toilet to his wheelchair.   (iv) The actions required to replace and properly locate this side wall grab bar are easily accomplishable and able to be carried out without much difficulty or expense.

oo.   (i) As shown in the photograph below, the lavatory supply and drain pipes under the sink in the women's restroom in La Mariposa are not insulated.   (ii) The lavatory supply and drain pipes under this sink are not insulated, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) In his wheelchair, the Plaintiff encountered these pipes under this sink and he risked skin burns and injury to his legs since they are not insulated.   (iv) The action required to insulate the pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



pp. (i) In the women's restroom in La Mariposa, the centerline of the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of this toilet paper dispenser, the Plaintiff could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate or replace this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

qq.   (i) In the women's restroom in La Mariposa, the distance from the centerline of the toilet to the side wall is more than 18 inches.   (ii) The distance from the centerline of this toilet to the side wall is not between a minimum of 16 inches (405 mm) and a maximum of 18 inches (455 mm), in violation of Federal Law 2010, ADAAG § 604.2.   (iii) Due to

this condition, it was difficult for the Plaintiff to reach the side wall grab bar and he could not reach the toilet paper dispenser from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet is easily accomplishable and able to be carried out without much difficulty or expense.

rr.   (i) In the women's restroom in La Mariposa, the bottom edge of the mirror's reflecting surface is about 45 inches above the floor and higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than the maximum allowed height of 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to its height of this mirror's reflecting surface above the floor, the Plaintiff could not see his full face in this mirror.   (iv) The action required to adjust the height of this mirror's reflecting surface is easily accomplishable and able to be carried out without much difficulty or expense.

ss.   (i) In the women's restroom in La Mariposa, to operate the lock to the accessible toilet compartment requires tight grasping, pinching, or twisting of the wrist.   (ii) This condition is in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff tried but could not operate this door lock with a closed fist or loose grip.   (iv) The action required to replace this door lock is easily accomplishable and able to be carried out without much difficulty or expense.

36.   All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

37.   The discriminatory violations described in paragraph 35 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of

public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' places of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

38.    The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' building and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

39.    Defendants have discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

40.    Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

41.    Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is

warranted.

42.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

43.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

44.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

45.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter Diagonal Service Center, La Mariposa, and the parking lot, access aisles and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the

ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that the Defendants at the commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates

Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*

28